UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL LEE MOREAU,<br><br>             Petitioner,<br><br>     v.<br><br>M.E. SPEARMAN,<br><br>             Respondent. | No. 2:17-cv-02439 KJN<br><br><br>FINDINGS & RECOMMENDATIONS |

I.  Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2016 conviction for assault with a deadly weapon, for which he was sentenced to twelve years in state prison.  Petitioner claims that the trial court abused its discretion by allowing the prosecution to impeach petitioner with a prior conviction for "the exact same crime" he faced at trial, (2) in the alternative, petitioner suffered ineffective assistance of counsel because trial counsel did not request that the prior conviction be sanitized, and (3) trial counsel was also ineffective in failing to object to the $2,400 fine imposed where petitioner lacked the ability to pay.  After careful review of the record, this court concludes that the petition should be denied.

////

////

II.  Procedural History

On May 18, 2016, a jury found petitioner guilty of assault with a deadly weapon (Cal. Pen. Code, § 245(a)(1)) and found true the following enhancements: great bodily injury, prior felony convictions and a prior strike.  (LD[1] 2 at 272-75; LD 5 at 452-55, 475-77.)  On June 6, 2016, petitioner was sentenced to eight years for the assault count (Cal. Pen. Code, § 245(a)(1)), plus three years for causing great bodily injury (Cal. Pen. Code, § 12022.7(a)), plus one year for prior convictions (Cal. Pen. Code, § 667.5(b)), for a total of twelve years in state prison.  (LD 2 at 426; LD 2 at 2; LD 5 at 498-502; LD 14.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  (See LD 8-10.)  The Court of Appeal remanded for correction of the abstract of judgment, but otherwise affirmed the conviction on June 13, 2017.  (LD 11.)

Petitioner filed a petition for review in the California Supreme Court (LD 12), which was denied on August 16, 2017. (LD 13.)

Petitioner filed petition for writ of habeas corpus with this court on November 20, 2017. (ECF No. 1.)  The instant amended petition was filed on March 12, 2018.  (ECF No. 10.)  Respondent filed an answer to the petition on May 16, 2018.  (ECF No. 14.)

III.  Facts[2]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> On the date of the offense, Roger L., the victim, lived in rented premises on an 11–acre ranch in El Dorado County owned by his brother Brian L., who lived on the ranch in a separate residence. Defendant and his wife rented another residence on the ranch.
>
> The property included barns, a workshop, and other outbuildings. Roger L. helped take care of the horses on the site; he and his brother also worked on-site for the family art restoration business.

---

[1] "LD" refers to the documents lodged with this court by respondent on May 16, 2018.

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Moreau, No. C082263 (June 13, 2017), a copy of which was lodged by respondent as Lodged Document 11.

2

When doing chores, Roger L. used a cheap work knife with a four-inch blade, which he clipped onto his belt. He carried it almost every day.

> [FN. 2:] Roger L. also made custom knives as a hobby. Unlike his work knife, they had exotic wood handles and leather sheaths. He kept them in a box in his storage room.

Defendant grew marijuana commercially outside his residence. On or around April 28, 2015, Roger L. took five or six cuttings from defendant's crop for his personal use and put them in grow pots beside his own residence, believing defendant had given him permission to do so. His belief was mistaken. When defendant discovered what had happened, he banged on Roger L.'s window around 9:00 p.m. and accused him of theft. Roger L. did not respond or go outside. Defendant grabbed some of the cuttings and walked away.

The next morning, Roger L. walked over to defendant's residence to apologize, intending to stop there on his way to the barns. Defendant and his wife came outside, yelling at him from their porch. Roger L. remained on the ground at the bottom of the stairs leading up to the porch. He tried to tell defendant he was not there to fight, then turned around.

Defendant, who had come down the stairs, grabbed Roger L. from behind by the shoulders, spun him back around, and faced him with one fist raised in the air. When Roger L. lifted an arm to block the expected punch, defendant struck him with a metal club or barbell, disabling his arm.

> [FN. 3:] When treater later that day, Roger L.'s injury turned out to be a "fairly severe fracture" of the left wrist.

After being struck, Roger L. realized he was carrying his knife and pulled it out to defend himself, while telling defendant to stay away.[] Defendant kept swinging his club and threatening to kill Roger L.; defendant's wife also swung a weight at Roger L. and urged defendant to kill him. Roger L. backed away, making parrying motions, until he was able to retreat to his residence, where he called 911.

> [FN. 4:] Roger L. told El Dorado County Sheriff's Deputy Richard Horn later that day that he pulled the knife out before defendant hit him with the club. He told the same story to a defense investigator.

When Brian L. returned to the ranch, he found defendant and defendant's wife chaining off part of the property. He then met Roger, whose arm was severely injured. After Roger spoke to a sheriff's deputy at the ranch, the brothers went into town to get treatment for Roger's injury.

When defendant was arrested he had no apparent injuries. About 10 feet from his residence, a dumbbell was found on a washing machine.

Roger L.'s knife was found inside his residence, where he had said it would be.

Testifying on his own behalf, defendant admitted that he had been convicted in 2007 of possession of marijuana for sale and assault by means of force likely to cause great bodily injury.

According to defendant, Roger L. took 21 cuttings from defendant's marijuana crop without permission. Defendant contacted him, told him not to take anything without permission, picked some of the cuttings up, said they were his, and took them back to his residence.

The next morning, according to defendant, Roger L. banged on the side of defendant's residence. When defendant came out, Roger L. said he wanted to apologize, but then screamed, "Don't touch me," turned and fumbled under his jacket, pulled out a knife, and lunged with it at defendant (who had stepped behind a chair for cover).[] Defendant picked up a dumbbell and took a step toward Roger L., who squared off and lunged forward with the knife. Defendant tried to strike at Roger L.'s hand with the dumbbell to protect himself; the third time Roger L. lunged forward, defendant struck him on the wrist. As Roger L. headed back to his residence, defendant put the dumbbell down on a washing machine. Roger L. yelled that he was calling 911; defendant yelled back that he was calling Roger L.'s brother.

[FN. 5:] Defendant claimed the knife was not the one produced in evidence, but one with a longer blade.

A recording of Deputy Horn's interview with defendant was admitted into evidence. The jury also received redacted versions of Roger L.'s 911 call and his statement at a prior court hearing.

(LD 11 at 2-4.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

4

court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] Lockyer v.

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be

Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of

_____

overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate

7

that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims

A. *Prior Conviction for Impeachment Purposes*

Petitioner claims that the trial court abused its discretion under California Evidence Code section 352 by allowing the People to impeach petitioner with a prior conviction for "the exact same crime." (ECF No. 11 at 5-13.) Respondent contends petitioner does not state a federal claim, and that, in any event, the state court's determination was reasonable, thereby precluding relief. (ECF No. 14 at 17-22.)

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Defendant contends the trial court abused its discretion in allowing the prosecutor to impeach defendant with a prior conviction for "the exact same crime" he was charged with. According to defendant, because the prejudicial effect of this evidence outweighed its probative value, its admission rendered the trial fundamentally unfair and deprived defendant of due process. We are not persuaded.
>
> Background
>
> The People moved in limine to impeach defendant with five prior felony convictions if he testified: a drug sale conviction from 1989, a drug transportation conviction from 1992, a kidnapping conviction from 1994, a drug possession for sale conviction from 2007, and an "assault with a deadly weapon" conviction from 2007. Defendant opposed impeachment with any of his prior convictions.
>
> At a hearing on in limine motions, the trial court indicated that it was inclined to admit the 2007 convictions, which were for crimes of moral turpitude, but to exclude the others as too remote. Defense counsel asserted that the facts of the assault conviction were not substantially similar to those alleged here, which would render its use prejudicial under Evidence Code section 352 and the *Beagle* test (*People v. Beagle* (1972) 6 Cal.3d 441, 453 (*Beagle*)), superseded by

8

statute on other grounds as stated in *People v. Rogers* (1985) 173 Cal.App.3d 205, 208–209).

The trial court ruled as to the assault conviction: "[T]he court will note that the ... Section 245 [subdivision] (a)(1) conviction from 2007 does cause the Court to more carefully look at it, because the charge is identical to the charge in Count 1 of the Information that pertains to this case. [¶] The fact they're identical does not automatically eliminate it, in and of itself, but it does cause the Court to carefully consider [Evidence Code] Section 352 to ensure that the use of this impeachment conviction is not more prejudicial than probative. [¶] I would submit to anyone who is reviewing this that I've carefully considered [Evidence Code] Section 352. I find the prior conviction probative. I find it to be prejudicial also, but I do not find the prejudicial effect to substantially outweigh the probative value. [¶] I will also note that [defendant]'s record is bad. He's got these three convictions, which I've excluded, as well as the [Vehicle Code section] 2800.2, which the jury is not going to hear about. To exclude everything but the [Health and Safety Code section] 11359 conviction for impeachment purposes would be to grossly mislead the jury, and I'm not going to do that. [¶] I'm not going to permit the jury to hear about five convictions, but I am going to permit them to hear about two so they're not misled as to the criminality and the impeachability of the [d]efendant."

When the prior convictions were introduced, the trial court immediately instructed the jury, at defense counsel's request, that it could use this evidence only to assess defendant's credibility. No facts about the nature of defendant's offenses were mentioned.

Analysis

The trial court may bar the use of prior felony convictions to impeach a testifying defendant if their probative value is outweighed by the risk of potential prejudice. (Evid. Code, § 352; *People v. Muldrow* (1988) 202 Cal.App.3d 636, 644 (*Muldrow*), citing *Beagle, supra*, 6 Cal.3d at p. 453.) The factors the court should weigh include: "(1) [w]hether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions." (*Muldrow*, at p. 644, citing *Beagle*, at p. 453.) However, "these factors need not be rigidly followed." (*Muldrow*, at p. 644.)

A testifying defendant is not entitled to a false aura of veracity. (*Beagle, supra*, 6 Cal.3d at p. 453.) A felony evincing moral turpitude reflects adversely on a defendant's honesty or veracity. (*People v. Castro* (1985) 38 Cal.3d 301, 315–316 (*Castro*).)

An appellate court reviews a trial court's rulings under Evidence Code section 352 for abuse of discretion, and will reverse only if the court """"exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of

justice." [Citation.]'" (*People v. Merriman* (2014) 60 Cal.4th 1, 74.)

Defendant does not dispute that felony assault by means likely to inflict great bodily injury is a crime evincing moral turpitude. (*People v. Elwell* (1988) 206 Cal.App.3d 171, 177.) Nor does he contend that his 2007 conviction for this offense was too remote. He argues only that its admission was prejudicial because it amounted to "the identical [offense] with which [defendant] was charged at trial." This contention fails.

As defendant acknowledges, "[p]rior convictions for the identical offense are not automatically excluded." "'The identity or similarity of current and impeaching offenses is just one factor to be considered by the trial court in exercising its discretion.' [Citation.]" (*People v. Green* (1995) 34 Cal.App.4th 165, 183.)

Defendant cites *Beagle, supra*, 6 Cal.3d at page 453, for the proposition that "'those convictions which are for the same crime should be admitted sparingly.'" That proposition, which *Beagle* sets out in dictum as part of a quotation from a 1967 federal appellate decision,[] is in some tension with the current California rule that even "the admission of multiple identical prior convictions for impeachment is not precluded as a matter of law [citation]." (*People v. Green, supra*, 34 Cal.App.4th at p. 183.) In any event, however, the *Beagle* dictum does not bar the admission of a single conviction for the same crime to impeach a testifying defendant. (*People v. Dillingham* (1986) 186 Cal.App.3d 688, 695.)

> [FN. 6:] In *Beagle*, our high court found that the defendant's prior conviction, which was for an offense not the same as or similar to any offense charged at trial, was properly admitted. (*Beagle, supra*, 6 Cal.3d at pp. 447, 451, 454.)

The only authority defendant cites that directly supports his contention is *People v. Thomas* (1981) 119 Cal.App.3d 960 (*Thomas*), where the appellate court reversed a conviction on the grounds that the defendant was prejudiced by impeachment with a prior conviction of the offense presently charged against him (robbery). (*Id*. at pp. 963–966 (maj. opn. of Miller, J.).)[] *Thomas* is factually distinguishable, and to some extent it is no longer good law.

> [FN. 7:] A dissenting justice would have found the admission of this evidence harmless under *People v. Watson* (1956) 46 Cal.2d 818. (*Thomas, supra*, 119 Cal.App.3d at pp. 966-969 (dis. opn. of Rouse, J.).)

First, the appellate court in *Thomas* disapproved of the trial court's justification for admitting the defendant's prior conviction (to offset the fact that a prosecution witness's prior convictions had been introduced). (*Thomas, supra*, 119 Cal.App.3d at p. 966.) The trial court here did not abuse its discretion in that way. It admitted the evidence only after considering Evidence Code section 352 and the *Beagle* test.

Second, the defendant in *Thomas* did not testify (*Thomas, supra*, 119

Cal.App.3d at p. 963), and the appellate court found that the absence of his testimony could have been prejudicial in itself (*id.* at pp. 965–966). Since defendant in our case testified, that possible source of prejudice did not exist.

Lastly, the *Thomas* court found, in reliance on *People v. Fries* (1979) 24 Cal.3d 222, at page 229 (*Fries*), that the defendant's prior robbery conviction was "only marginally relevant to ... credibility and thus entitled to somewhat less weight." (*Thomas, supra,* 119 Cal.App.3d at p. 964.) However, since the enactment of article I, section 28, subdivision (f) of the California Constitution, the distinction drawn by *Fries* no longer states the law: all felonies involving moral turpitude, whether or not they directly evince dishonesty, are admissible for impeachment without any restriction other than that of Evidence Code section 352. (*Castro, supra,* 38 Cal.3d at pp. 315–316 & fns. 10 & 11; see also *id.* at pp. 307–312 [Proposition 8 intended to "reject the rigid, black letter rules of exclusion which we had grafted onto the code by the [*People v.] Antick* [(1975) 15 Cal.3d 79] line of decisions [including *Fries*]."])

For all of the above reasons, *Thomas* does not assist defendant.

We conclude that defendant has failed to show any abuse of discretion in the trial court's decision to admit his prior felony assault conviction for impeachment. Therefore, we need not consider defendant's argument that the improper admission of this evidence was prejudicial. We note, however, that his assertion that the jury could not have followed the court's limiting instruction is mistaken as a matter of law. (*People v. Holt* (1997) 15 Cal.4th 619, 662.)

(LD 11 at 5-9.)

<u>Applicable Legal Standards</u>

A state court's admission of evidence under state evidentiary law will form the basis for federal habeas relief only where the evidentiary ruling "so fatally infected the proceedings as to render them fundamentally unfair" in violation a petitioner's due process rights. <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991). "[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief." <u>Id.</u>

The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly," <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990), and "has made very few rulings regarding the admission of evidence as a violation of due process." <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009). It has opted not to hold that evidence of other crimes or bad acts "so infused the trial with unfairness as to deny due process of

law." Estelle, 502 U.S. at 75 & n.5 (noting that the Court "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). Moreover, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley, 568 F.3d at 1101 (citing Carey v. Musladin, 549 U.S. at 77). In the absence of clearly established law that admission of even overtly prejudicial evidence constitutes a due process violation, the court cannot conclude that the state court's ruling was an "unreasonable application." Id.; see also Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (holding that because the Supreme Court has expressly reserved the question of whether using evidence of a defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process, the state court did not unreasonably apply clearly established law in determining that the admission of defendant's criminal history did not violate due process). A federal court is "without power" to grant a habeas petition based solely on the admission of evidence. Id.

Even setting aside the issue of clearly established federal law, "[a] habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005), as amended, 421 F.3d 1154 (9th Cir. 2005). Again, "'[t]he admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.'" Holley, 568 F.3d at 1101. "Only if there are no permissible inferences the jury may draw from evidence can its admission violate due process." Alcala v. Woodford, 334 F.3d 862, 887 (9th Cir. 2003) (emphasis in original); Houston v. Roe, 177 F.3d 901, 910 n.6 (9th Cir. 1999). "Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" Jammal v. Van de Kamp, 926 F.2d at 920 (citation omitted). That can only occur if the admission of the evidence had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 623 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

////

////

<u>Analysis</u>

Initially, the undersigned's notes that a review of the record supports the state appellate court's recitation of the proceedings at issue.  (<u>See, e.g.,</u> LD 4 at 51-56; LD 1 at 129, 201.)

Next, because United States Supreme Court precedent does not clearly establish that the admission of this type of evidence violates due process, petitioner is not entitled to relief in these proceedings.  <u>See</u> <u>Holley</u>, 568 F.3d at 1101.  Nevertheless, the state court reasonably concluded the trial court's determination, to admit impeachment evidence in the form of petitioner's two prior convictions – one of which involves the same assault crime – was not an abuse of discretion.

Because petitioner put his credibility at issue by choosing to testify, <u>see</u> <u>Boyde v. Brown</u>, 404 F.3d at 1174, there was a rational and constitutionally permissible inference to be drawn from the prior conviction evidence, namely, that petitioner was not credible.  "[C]riminal defendants are not entitled to a false aura of veracity when they take the stand."  <u>United States v. Portillo</u>, 633 F.2d 1313, 1322 (9th Cir. 1980).  When an accused elects to testify, "his credibility may be impeached, his testimony may be assailed, and is to be weighed as that of any other witness."  <u>Id.</u> (quoting <u>Reagan v. United States</u>, 157 U.S. 301, 305 (1895)).

Finally, even assuming the trial court constitutionally erred in failing to exclude prior convictions, petitioner is not entitled to federal habeas relief because the admission of such evidence did not have a "substantial and injurious effect on the jury's verdict."  <u>See</u> <u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1203 (9th Cir. 2006) (applying <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), harmless error analysis to claim that admission of evidence was improper).

The felony convictions were mentioned only briefly on cross-examination of petitioner.  (LD 5 at 333-334.)  Further, in closing argument (LD 5 at 399-421), the prosecutor mentioned petitioner's "felony drug charge and [] felony assault charge with force likely to cause great bodily injury" while addressing witness credibility.  The comment was brief.  (LD 5 at 419:22-420:15.)  And, the impeachment evidence was not a subject of rebuttal argument.  (LD 5 at 431-34.)  Moreover, the evidence against petitioner was strong even where the victim and petitioner's testimony otherwise amounted to a credibility contest.  Other evidence supported the victim's version of events.  (LD 4 at 203-15, 222-32, 238-39, 246-48; LD 5 at 377-80; <u>see also</u> LD 2 at

13

285-308 [interview of petitioner].)

Further, any threat of improper prejudice flowing from the prior conviction evidence was mitigated by the trial court's instruction to the jury that such evidence was only to be considered in assessing the believability of the witness. (LD 1 at 241-42, 249; LD 5 at 387-91.) The jury is presumed to follow instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000).

Thus, in light of the brief nature of the references to petitioner's prior felony convictions for drug sales and assault, the trial court's limiting instruction, and the weight of the other evidence establishing petitioner's guilt on the offenses of conviction, any error in the failure of the trial court to exclude the prior convictions was harmless.

The state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority. 28 U.S.C. § 2254(d). The state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Therefore, the claim should be denied.

B.     *Ineffective Assistance of Counsel: Priors*

In his second ground, as alternative to the first, petitioner claims that trial counsel was ineffective for failing to request that the prior conviction be "sanitized." (ECF No. 11 at 13-14.) Respondent maintains the state court's denial of petitioner's claim was reasonable. (ECF No. 14 at 23-25.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Defendant contends in the alternative that his trial counsel was ineffective for failing to request that the prior conviction be sanitized. Since we have found the admission of the "unsanitized" conviction was proper and did not cause prejudice, we reject this contention. In any event, the record does not support defendant's claim.
>
> Where the record does not show the reason for the conduct alleged to constitute ineffective assistance of counsel, an appellate court will reject the claim unless there could not have been a good reason for

14

1   counsel's conduct. (*People v. Maury* (2003) 30 Cal.4th 342, 389.)
2   Here, counsel might have decided not to request sanitization of the
    prior assault conviction because it would have been an awkward
3   remedy to apply under the circumstances of this case, and counsel
    could reasonably have surmised that the trial court would not grant
4   it.

5   The trial court has discretion to sanitize prior convictions admitted
    for impeachment by allowing them to be referred to only as prior
6   felonies. (*People v. Sandoval* (1992) 4 Cal.4th 155, 178; *People v.
    Ballard* (1993) 13 Cal.App.4th 687, 691–695.) Here, however,
7   defendant was impeachable by convictions for two prior felonies,
    and since he was not presently charged with drug possession for sale,
8   his prior conviction of that offense could not have been sanitized.
9   Sanitizing only one of the priors might have distracted the jury by
    inviting speculation about the nature of the sanitized offense, and
10  defendant cites no authority approving sanitization on similar facts.
    Counsel was not ineffective for failing to request sanitization under
11  these circumstances.

12

13  (LD 11 at 9-10.)

14                    Applicable Legal Standards

15       To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his

16  trial counsel's performance "fell below an objective standard of reasonableness" and that "there is

17  a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

18  would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

19       Under the first prong of the Strickland test, a petitioner must show that counsel's conduct

20  failed to meet an objective standard of reasonableness. Strickland, 466 U.S. at 687. There is "a

21  'strong presumption' that counsel's representation was within the 'wide range' of reasonable

22  professional assistance." Harrington v. Richter, 562 U.S. at 104 (quoting Strickland, 466 U.S. at

23  689). Petitioner must rebut this presumption by demonstrating that his counsel's performance

24  was unreasonable under prevailing professional norms and was not the product of "sound trial

25  strategy." Strickland, 466 U.S. at 688-89. Judicial scrutiny of defense counsel's performance is

26  "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at

27  the time it occurred, without the benefit of hindsight. Id. at 689. "[S]trategic choices made after

28  thorough investigation of law and facts relevant to plausible options are virtually

                                            15

1  unchallengeable." Strickland, 466 U.S. at 690.

2         The second prong of the Strickland test requires a petitioner to show that counsel's

3  conduct prejudiced him. Strickland, 466 U.S. at 691-92. Prejudice is found where "there is a

4  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

5  would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine

6  confidence in the outcome." Id. at 693. "This does not require a showing that counsel's actions

7  'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice

8  standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'"

9  Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693). "The likelihood of a different

10  result must be substantial, not just conceivable." Id.

11                          Analysis

12         The prosecution moved to admit evidence of petitioner's prior convictions should he elect

13  to testify at trial; specifically, the People originally identified five prior convictions. (LD 4 at 51.)

14  Following argument by the parties, the court permitted the admission of two of the five prior

15  convictions for purposes of impeachment: convictions pursuant to California Health and Safety

16  Code section 11359 (possession of marijuana for sale) and California Penal Code section 245

17  (assault with a deadly weapon). (LD 4 at 52-57.) Defense counsel did not request the two

18  convictions be sanitized.

19         Petitioner testified at trial and during cross-examination, the following exchange occurred:

20         [PROSECUTOR]: You've been in trouble with the law before?

21         [PETITIONER]: Yes.

22         Q. Okay. In fact, you were convicted back in 2007 - - May 4th,
23         2007, a felony conviction for Health and Safety Code 11359, which
           is possession for sale of marijuana.

24         A. That is correct.

25         Q. And that was in this county, correct?

26         A. Yes.

27         Q. And then, again, you were convicted in 2007 for a felony charge
           of Penal Code Section 245(a)(1), assault with a deadly weapon, in
28         this county as well.

1    A.  Actually, I believe it was assault with force likely to procedure
     great bodily injury.  There was no deadly weapon.

2
     Q.  Okay.  The same charge, though, that you have here today.

3
     A.  Today, I believe it's an assault with a deadly weapon.  And in
4    2007 it was assault with force likely to produce great bodily injury.
     There was no weapon involved.

5
     [DEFENSE COUNSEL]:  Your Honor, I would request a limiting
6    instruction to the jury at this point, please.

7    THE COURT:  Okay.  Ladies and gentlemen, the information that
     was just elicited can be utilized by you for one purpose and one
8    purpose only, and that's to assess the credibility of the witness, Mr.
     Moreau.

9
     It's not evidence that you can use to try to figure out what happened
10   in this case.  It's not evidence that you can use to tell you he's a bad
     person. That's not relevant.

11
     What is relevant is these two felony convictions can be utilized by
12   yourself to help you determine how credible the witness is or is not.

13   [DEFENSE COUNSEL]: Thank you, Your Honor.

14   [PROSECUTOR]: All my question was is it's the same code section.

15   [PETITIONER]:  It is the same Penal Code section, yes.

16

17   (LD 4 at 334-35.)  Shortly thereafter, at a bench conference, the trial court indicated it had been

18   "caught [] off guard" regarding defense counsel's request for a limiting instruction and that it

19   "improvised," indicating the court would be reading the "real instruction" to the jury.  (LD 4 at

20   344.)  Thereafter, the trial court instructed the jury as follows:

21   Okay.  Ladies and gentlemen, before we take another short recess,
     that I'll explain for you, [defense counsel] had asked me to give a
22   limiting instruction with regards to the two prior felony convictions
     that [petitioner] had suffered in this case in 2007.

23
     I improvised.  I'm going to now read you the actual instruction that I
24   will reread to you at the end of this case before you deliberate.  The
     instruction reads as follows:

25
     If you find that a witness has been convicted of a felony or felonies,
26   you may consider that fact only in evaluating the credibility of the
     witness's testimony. The fact of a conviction does not necessarily
27   destroy or impair a witness's credibility.  It is up to you to decide the
     weight of that fact and whether that fact makes the witness less
28   believable.

                                        17

(LD 4 at 344-45.)

The state court's determination that even had the prior felony assault conviction been sanitized, the remaining felony drug possession for sale conviction would not have been, and therefore, sanitizing only one of the two priors could have invited speculation as to the nature of that crime, was a reasonable one. It was further reasonable for the state court to conclude that counsel could have surmised the trial court would not grant such a request as it was not required to do so; that decision is discretionary. Petitioner has not established that counsel's failure to request to sanitize the prior convictions was outside prevailing professional norms. Nor can petitioner show a reasonable probability that absent counsel's failure the outcome of the trial would have been different. While a different outcome is conceivable, the reasonable probability of a different outcome is not substantial in light of the evidence presented and considered by this jury.

For all of the above reasons, petitioner failed to demonstrate that the state court's rejection of this claim is contrary to, or an unreasonable application of, <u>Strickland</u>. 28 U.S.C. § 2254(d). Accordingly, this claim should be denied.

C. *Ineffective Assistance of Counsel: Restitution Fine*

Lastly, petitioner argues he was denied the right to counsel by defense counsel's failure to object to the fine imposed pursuant to California Penal Code section 1202.4(b) because petitioner had no ability to pay the fine. (ECF No. 11 at 15-16.) Respondent counters that this court may not consider this claim, and that, in any event, the state court's rejection of the claim was reasonable. (ECF No. 14 at 25-27.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Defendant also contends trial counsel was ineffective for failing to object to the $2,400 fine imposed by the trial court under section 1202.4, subdivision (b). We disagree.
>
> The probation report recommended a restitution fine of $2,400 pursuant to section 1202.4, subdivision (b). Trial counsel did not object to this amount, and the trial court imposed it. However, the

18

court reduced the recommended cost of the probation report ($1,095) to $109.50 after counsel objected that defendant could not pay the recommended amount. Therefore, defendant concludes, a similar objection to the amount of the restitution fine would necessarily have succeeded. Defendant's conclusion does not follow from his premise.

As to the restitution fine, the defendant has the burden of proving he cannot pay any amount above the statutory minimum. (§ 1202.4, subd. (d).) Defendant does not cite any evidence that he could not do so. His alleged present inability to pay is not dispositive, since the trial court could also consider his future earning capacity. (§ 1202.4, subd. (d).) Defendant's bare assertion that he has no future earning capacity because he is incarcerated is contrary to law. (See *People v. Gamache* (2010) 48 Cal.4th 347, 409 ["bare fact of [the defendant's] impending incarceration," absent other evidence, did not show inability to pay restitution fine].)

The probation report cost, on the other hand, is governed by section 1203.1b, which requires the trial court to hold a hearing (unless waived) to determine the defendant's ability to pay. (§ 1203.1b, subd. (b).) In making that determination, the trial court must consider the defendant's "[p]resent financial position," his "[r]easonably discernible future financial position," the "[l]ikelihood that the defendant shall be able to obtain employment within the one-year period from the date of the hearing," and "[a]ny other factor or factors that may bear upon the defendant's financial capability to reimburse the county for the costs." (§ 1203.1b, subd. (e)(1)-(4).) The court may not look beyond one year from the date of the hearing to determine the defendant's "reasonably discernible future financial position." (§ 1203.1b, subd. (e)(2).)

As defendant points out, the trial court greatly reduced the sum assessed for the probation report cost after holding the statutorily required hearing. But because the factors involved in determining a defendant's ability to pay under section 1203.1b are so different from those the court must consider under section 1202.4, subdivision (b), the court's determination as to the former has no bearing on the latter. Therefore, the court's order as to the probation cost does nothing to show that an objection to defendant's ability to pay the restitution fine would have succeeded. Defendant's claim of ineffective assistance fails.

(LD 11 at 10-11.)

Analysis

This claim is not a cognizable federal habeas claim, and couching it as a due process claim does not help petitioner. See Flores v. Hickman, 533 F.Supp.2d 1068, 1085 (C.D. Cal. 2008) (citing United States v. Thiele, 314 F.3d 399, 402 (9th Cir. 2002) ["Nor does it matter that Thiele couched his restitution claim in terms of ineffective assistance of counsel"]); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (habeas petitioner may not "transform a state-law issue into a

19

federal one merely by asserting a violation of due process").  This determination is so because a federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The "in custody" requirement under section 2254(a) is jurisdictional and has two aspects: (1) the petitioner must be in custody at the time the petition is filed, and (2) the custody must be under the conviction or sentence under attack at the time the petition is filed. Bailey v. Hill, 599 F.3d 976, 978 (9th Cir. 2010).  "Custody" includes significant or severe restraints on liberty, but it does not include mere collateral consequences of a conviction, such as orders for restitution.  Id. at 978-81 (claim that petitioner ordered to pay restitution in violation of Constitution does not constitute claim that petitioner is in custody in violation of Constitution).

Petitioner's challenge to the restitution order is not cognizable even where, as here, petitioner has couched it in constitutional terms or has made other constitutional challenges to his conviction. See, e.g., Cochran v. Valenzuela, No. 1:13–cv00445–BAM (HC), 2013 WL 1800322, at *1 (E.D.Cal. Apr. 29, 2013) (double jeopardy challenge to restitution fine not cognizable because the restitution fine did not affect the fact or duration of inmate's custody); Muse v. N. Kern State Prison (Warden), No. CV 08–2749 SJO (JC), 2012 WL 2700080, at *30 (C.D.Cal. June 5, 2012) (ex post facto challenge to court security fee not cognizable on federal habeas review), Report and Recommendation adopted by 2012 WL 2685194 (C.D.Cal. July 2, 2012); DeFrance v. Hedgpeth, No. 2:10–cv–0140 JFM (HC), 2012 WL 1594161, at * 13 (E.D.Cal. May 4, 2012) (challenge to amount of restitution imposed by state court not cognizable even where inmate made four other constitutional challenges seeking release from custody; focus is on the relief sought in the claim itself, not other claims mentioned elsewhere in petition).

Accordingly, the undersigned finds that ground three of the amended petition for writ of habeas corpus raises a claim that is not cognizable on federal habeas review and over which this Court lacks jurisdiction.  Hence, the claim should be denied on that basis.

VI.  Conclusion

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and IT IS HEREBY RECOMMENDED that

petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: March 31, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

More2439.157